**In re WOODLAND CORPORATION, Debtor.**

**Bankruptcy No. 11–82–01186 RA.**

United States Bankruptcy Court, D. New Mexico.

April 24, 1985.

---

Oliver Cohen, Albuquerque, N.M., for debtor.

Michael Wile, Albuquerque, N.M., for Public Service Co. of N.M.

## MEMORANDUM OPINION

STEWART ROSE, Bankruptcy Judge.

This matter comes before the Court on Public Service Company of New Mexico's (PNM) request for payment as an administrative expense priority of amounts due it from the debtor-in-possession for post-petition electrical service.

The debtor-in-possession, which formerly operated a motel in Albuquerque, New Mexico, filed a Chapter 11 petition November 12, 1982. PNM, a regulated utility, opened a new account for the debtor effective that date, and later, pursuant to 11 U.S.C. § 366, negotiated a $3,000.00 deposit. At some point during the pendency of these proceedings, the debtor stopped paying its electric bills. The arrearage now totals $16,605.06. Installment sale of the motel, pursuant to the confirmed plan, will eventually pay all creditors in full but funds do not now exist to pay non-priority creditors.

In support of this claim, PNM makes three arguments: 1, that Bankruptcy Code § 366 guarantees administrative priority; 2, that electric service is an actual, necessary cost of preserving the estate within the meaning of § 503(b)(1)(A); and 3, that the debtor breached an executory contract after its assumption and plan confirmation, with that breach entitling PNM to administrative priority. These points will be addressed sequentially.

▪ Section 366 of the Code, as the legislative history makes clear, H.R. No. 95–595, 95th Cong., 1st Sess. 350 (1977), U.S. Code Cong. & Admin.News 1978, 5787, 6306, was drafted in consideration of the special services utilities provide. Because of the monopoly utilities generally enjoy, the debtor[1] cannot obtain a new source of supply. The debtor must deal with the entity to whom he seeks to discharge his obligation, an entity which may be reluctant to deal with a debtor even on a cash basis. To avoid such problems a utility may not, under § 366(a), refuse to continue service to a debtor solely on the basis of pre-petition debt.

However, utilities are not without protection. Subsection (b) allows the utility to cut off service twenty days post-petition if the debtor does not "furnish adequate assurance of payment, in the form of a deposit or other security, for service after such date."

Section 366 treats utilities differently from most post-petition creditors. Usually a debtor has several sources for needed goods and services, and can bolster his credit with the inducements of § 364. Forcing the debtor to give those same inducements to a utility could lead to extortionate demands from the utility, and could result in the utility obtaining senior liens on the debtor's property, to the distress of other creditors. Therefore, Congress established a separate method, "adequate assurance", of protecting utilities, leaving the exact method flexible.

1. Debtor as used here includes debtors-in-pos-     session and trustees.

PNM reads the House Report, *id.*, as indicating a Congressional intent that unpaid post-petition utility services in all cases receive an administrative expense priority: "If an estate is sufficiently liquid, the guarantee of an administrative expense priority may constitute adequate assurance of payment for future services." However, this sentence should be read in conjunction with the following sentence: "It will not be necessary to have a deposit in every case." Taken in context, it is clear that the debtor's guarantee of administrative priority may be given in place of a cash deposit. This guarantee is nothing more than what the debtor may offer, without court approval, under § 364.

What assurance will be offered and whether that assurance will be in the form of cash or administrative expense priority is a matter for negotiation. If the parties can not agree, then the Court may be asked to set an appropriate level of assurance. Adequate assurance is a matter to be determined on a case by case basis. Had Congress intended that utilities be accorded an automatic administrative expense priority, it would have said so. To the extent the cases [2] cited by PNM suggest otherwise, they are in error.

In this instance PNM and the debtor negotiated adequate assurance, and agreed on a $3,000.00 deposit. There has been no suggestion that an additional guarantee of administrative priority was even discussed. That being the case, PNM is not otherwise entitled to administrative priority.

PNM's second argument is that providing electrical service is an actual, necessary cost of preserving the estate, and should therefore be accorded administrative priority under § 503. This court recently dealt with a similar issue in *In Re Glover* 43 B.R.

322 (1984), ruling therein that post-petition suppliers whose performance was not induced by the debtor with an offer of administrative expense priority could not expect the Court to grant priority retroactively.[3] Here PNM voluntarily continued to provide electrical service long after the debtor ceased payments, the deposit was used up, and PNM lost its adequate assurance of payments.

PNM was free to discontinue service for non-payment for post-petition service. No supplier is obligated by the Code to provide goods or services without recompense. Yet PNM chose to do so. Shutting off the electricity would have been a clear indication to the Court and the other creditors that the debtor was not capable of managing itself, could not meet its on-going expenses, and so could not reorganize. At that point steps could have been taken to prevent further dissapation of the debtor's assets.

At best, a utility may be entitled to a Court's grant of administrative priority for the twenty days it must provide service without adequate assurance under § 366(b). Here PNM has been paid for that twenty day period. PNM could have cut off the debtor when its adequate assurance became less than adequate, but it did not. PNM will not now, after the fact, be granted the inducement of administrative priority where no inducement was required.[4]

PNM's final argument is that the agreement to provide electrical service was an executory contract which was breached post-confirmation, entitling PNM to administrative priority. PNM cites as authority the distinction between § 365(g)(2)(A) and § 365(g)(1). However, these sections relate only to the time a claim arises, not whether

---

**2.** Neither *In Re Santa Clara Circuits West, Inc.* 27 B.R. 680, 8 C.B.C. 85 (B.C.1982) or *In Re Utica Floor Maintenance, Inc.* 25 B.R. 1010, 8 C.B.C. 157 (N.D.N.Y.1982) directly addressed the issue.

**3.** A corollary is that those who involuntarily extend credit, such as taxing authorities and landlords, may be entitled to administrative pri-

ority. The Code explicitly provides priority in many of these circumstances.

**4.** It should be noted that while § 507(b) grants administrative priority where adequate protection turns out to be less than adequate, there is no corresponding provision for adequate assurance.

the claim is to be accorded administrative expense priority. As this Court pointed out in *Glover,* timing alone is no guarantee of priority.

This Court does not, however, have to reach the issue, for it does not believe an executory contract was involved. This Court here applies the "Countryman" definition of an executory contract cited by PNM, to the effect that an executory contract is one in which some significant performance remains due from both parties. Here there is no indication that any significant performance was due from the debtor. The debtor was under no obligation to purchase any electricity from PNM, nor to do anything for PNM, save to pay for the electricity used. In this regard it was no different than any open-account transaction. There certainly may be times where relations between consumers and utilities are executory in nature, but this was not one. That being the case, it is not necessary for this Court to determine whether post-assumption, post-confirmation breaches of executory contracts are entitled to bankruptcy or non-bankruptcy remedies.

Based on the foregoing, it is this Court's conclusion that PNM is not entitled to an administrative expense priority for the amounts due it from the debtor. Therefore, PNM's request for payment of an administrative expense is denied. The Court's order shall follow.