**In Re Jesse WATTS and Peggy Watts, Debtors.**

**Bankruptcy No. 1–85–01161.**

United States Bankruptcy Court, S.D. Ohio, W.D.

April 29, 1988.

Paul E. Lukey, Cincinnati, Ohio, for debtors.

Timothy J. Hurley, Cincinnati, Ohio, for CG & E.

Mark A. Greenberger, Cincinnati, Ohio, Trustee.

## DECISION and ORDER ON CLAIM OF CG & E

BERTON PERLMAN, Chief Judge.

This bankruptcy case was commenced as a Chapter 13 case on May 8, 1985. Debtors converted the case to Chapter 7 on May 15, 1987. Following the conversion, Cincinnati Gas and Electric Company (CG & E), a utility company, filed an application for allowance as an administrative expense of its claim for the provision of utility services during the Chapter 13 pendency in the amount of $2,331.57. CG & E says that it is advancing an administrative expense claim under Bankruptcy Code § 503, and is entitled to priority under Bankruptcy Code § 507 as modified by Bankruptcy Code § 726(b).

The Chapter 7 trustee, Mark A. Greenberger, Esq., has objected to the allowance of such claim. In his objection, the trustee says that during the time this case was pending as a Chapter 13 case, CG & E did not seek or obtain the approval of this court authorizing it to incur any administrative expense.

The matter came on for hearing at which time counsel for CG & E, and the trustee, were heard. CG & E explained at the hearing that it was the conversion of the case which precipitated the present question. Conversion makes the claim of CG & E a dischargeable debt. Prior to conversion, says CG & E, it could have proceeded under state law to assert its rights for failure of payment because it was providing a post-petition service. (While not relevant to the question before us now, we do feel moved to comment that the propriety of such conduct by CG & E in the event of a default is not as clear to us as it appears to CG & E, in view of § 362(a)(3) when considered in conjunction with § 1306. These sections suggest that recourse through the state courts for a post-filing default of a Chapter 13 debtor without leave of this court may not be appropriate, particularly when § 1305 is taken into consideration.)

We observe that this is a consumer case, not a business case, so that the relatively large amount sought by CG & E must represent services provided over a number of months, though we are not informed as to how many. (The budget provided in the Chapter 13 case estimated utilities such as electricity in the monthly amount of $200.00. We will proceed on the assumption that what is involved is utility payment for some ten months while debtors were in Chapter 13.)

In essence, it is the position of CG & E that the provisions of the Bankruptcy Code support its present position. It says that it is asserting a claim which indisputably is for "the actual, necessary costs and ex-

penses of preserving the estate." The essence of its position is that the provision of utilities is essential so that debtors can live and generate the income necessary to fund the Chapter 13 plan. It therefore falls squarely within the language of § 503(b)(1)(A), and thereby is entitled to having its claim allowed as an administrative expense. CG & E concedes that § 726(b) expressly provides that following a conversion to Chapter 7, Chapter 7 administrative expenses have priority over Chapter 13 administrative expenses. But, it says, if there are monies in the estate following a conversion to pay the Chapter 7 administrative expenses, then it is entitled to be paid its Chapter 13 administrative expense prior to any distribution to general unsecured creditors.

With none of the foregoing do we disagree. We find, however, a serious problem with the view of CG & E that it is entitled to be compensated for Chapter 13 services as an administrative expense regardless of the amount sought, or the length of time during which it provided services without getting paid. We believe that such an assertion would lead to inequity, would reward the sleeping upon his rights of a creditor, and would be unfair to general unsecured creditors. CG & E makes an appealing argument to the contrary, saying that it recognizes that there are often difficulties involved in the reorganization process of Chapter 13 cases, and the tolerance of an extended period of overlooking nonpayment is as a result of its desire to assist in the process of reorganization.

But a balance must be struck here. Where a Chapter 13 debtor is not able to meet its obligations for utilities, it means that the debtor is unable to perform his undertaking with the court in its Chapter 13 plan. One of the foundations for confirmation of the Chapter 13 plan is the acceptance by the bankruptcy judge and the Chapter 13 trustee that the payment undertaken is feasible, considering the items set forth in the budget provided by the debtor. The cost of utilities is one such item in the budget. If the debtor is not making his payment to a utility, the entire case is in jeopardy. For the utility to tolerate nonpayment for longer than a reasonable period of time, say two or three months, is to close its eyes to its jeopardy of not being paid at all for that service. This attitude affects not only itself, but is positively detrimental to other creditors of the debtor, for it may well signal that the debtor's estate is being dissipated in such a way as to defeat the rights of other creditors.

■ It is instructive to refer to *In re McKeesport Steel Castings Company*, 799 F.2d 91 (3rd Cir.1986). That case generally is irrelevant to that before us since it involves the assertion of a utility claim in a Chapter 11 case without a conversion. In *McKeesport*, the Court of Appeals ultimately ruled that the utility was entitled to the administrative expense it was asserting. The factor which draws our attention is that the Court of Appeals found it important in the facts before it, that during the pendency of the Chapter 11 case, the debtor stopped paying the utility. The court notes, at p. 92, that the utility *promptly* petitioned for permission to terminate service. This did not lead to a termination of service, but it led to the intervention of the bankruptcy court to oversee the undertakings between the utility and the debtor. It is fair to extend the expectation of reasonably prompt action by a creditor to the present question.

■ Accordingly, the objection of the trustee is sustained. The basis for this conclusion is not that CG & E is not entitled to an administrative expense for services provided during the pendency of the Chapter 13 case, but rather that the amount sought is excessive for the reasons we have stated. We will allow a claim by CG & E limited to the charge for three months of service following the first default, providing that CG & E informs the court of the amount of those charges promptly.

So Ordered.