In re Alfonso (NMN) MARTINEZ, Jr., and Kathleene (NMN) Martinez, Debtors.

Alfonso (NMN) MARTINEZ, Jr., and Kathleene (NMN) Martinez, Plaintiffs,

v.

PUBLIC SERVICE COMPANY OF COLORADO, Defendant.

Adv. No. 88 C 844.

Bankruptcy No. 87 B 15409 C.

United States Bankruptcy Court, D. Colorado.

Nov. 14, 1988.

As Amended Jan. 30, 1989.

Richard N. Gonzales, Denver, Colo., for debtors/plaintiffs.

Charles Carpenter, Denver, Colo., for defendant.

## OPINION AND ORDER

PATRICIA A. CLARK, Bankruptcy Judge.

This matter comes before the Court upon plaintiffs Alfonso (nmn) Martinez, Jr., and Kathleen (nmn) Martinez's (Debtors herein) complaint to enjoin Public Service Company of Colorado (PSC herein), from collecting a debt incurred between the filing of the Chapter 13 case and its conversion to Chapter 7. Debtors also seek to enjoin PSC from discontinuing or withholding utility service to them. Based on post-conversion delinquencies, the Court denied the injunction to prevent PSC from discontinuing service to Debtors, and took under advisement the issue regarding the status of postpetition, pre-conversion utility service claims.

Debtors contend that the postpetition, pre-conversion utility service debt should be treated as a prepetition claim under 11 U.S.C. § 348(d). They assert that the claim is not entitled to administrative expense treatment as it is an expense that has arisen in the ordinary course of the debtors' financial affairs.

PSC contends that the postpetition, pre-conversion claim for service should be treated as administrative expenses of the type specified in 11 U.S.C. § 503(b) which are expressly excluded from the operation of Section 348(d). Further, PSC asserts that requiring it to obtain an agreement that postpetition utility services be accorded administrative priority would be unduly burdensome on Chapter 13 debtors, the PSC and the courts. Alternatively, PSC contends that the breach of debtors' postpetition modified budget billing payment agreement is a breach of an executory contract and may constitute an administrative expense. PSC contends that it may set off the postpetition deposit against postpetition, pre-conversion delinquencies and require debtors to pay a new deposit after conversion.

The essential facts are as follows. Debtors filed their original petition for relief under Chapter 13 on December 18, 1987, and their Chapter 13 plan of reorganization was confirmed February 29, 1988. As of the date of filing the Debtors owed PSC approximately $375. Debtors paid a deposit of $240 to PSC on or about January 27, 1988. Debtors' failure to pay for postpetition utility service resulted in PSC's termination of service to debtors' residence on or about March 21, 1988. Service was restored by PSC on that date upon Debtors' agreement to a modified budget billing payment plan. Postpetition service was again terminated by PSC on or about June 21, 1988, as debtors failed to make payments required by the modified budget billing payment plan. Service was restored once again on that date upon the Debtors' agreement to a new modified budget billing payment plan. On June 30, 1988, the Court converted this case to a Chapter 7 proceeding on the Debtors' motion to convert. As of the date of conversion to a Chapter 7, Debtors owed PSC approximately $450 for postpetition utility service.

The first issue before the Court is whether Debtors' postpetition and pre-conversion utility service claims are to be treated as prepetition claims pursuant to 11 U.S.C. § 348(d) or should be treated as an administrative expense under 11 U.S.C. § 503(b). Section 348(d) provides that:

> A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1307 or 1208 of this title, other than a claim specified in section 503(b) of this title shall be treated for all purposes as if such claim had arisen immediately before the filing of the petition.

The relevant portion of Section 503(b)(1)(A) allows administrative expenses for "the actual, necessary costs and expenses of preserving the estate...." Hence, unless the PSC's claim is determined in whole or in part to be an administrative expense under 503(b), their claim for services would be treated as a prepetition claim. *See In re Davison,* 79 B.R. 866, 868 (Bankr.W.D.Mo. 1987); and *In re Allen,* 67 B.R. 46, 48 (Bankr.W.D.N.Y.1986).

■ The Court's determination of whether an administrative expense should be granted in this case requires consideration of 11 U.S.C. § 366(b). Section 366(b) allows the utility to cut off service 20 days postpetition if the debtor does not

> *furnish adequate assurance of payment,* in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment. (Emphasis added.)

Clearly, no utility is required to continue service without some type of adequate assurance of payment. The legislative history from H.R. 95–595, 95th Cong., 1st Sess. 350 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 6306, states that "[i]f an estate is sufficiently liquid, the guarantee of an administrative expense priority may constitute adequate assurance of payment for future services." However, there is nothing in the statute or the legislative history to indicate that utility companies are entitled to an automatic administrative expense priority.

*In re Woodland Corp.*, 48 B.R. 623 (Bankr.D.N.M.1985), the court applied Section 366(b) in its determination that a utility was not entitled to an administrative expense priority. There the utility accepted a deposit for adequate assurance of payment and the parties did not discuss an additional guarantee of administrative priority. The Court noted that an administrative priority may be given in place of a cash deposit for utility service. Without a debtor's guarantee of administrative priority, the court stated that: "[a]t best, a utility may be entitled to the Court's grant of administrative priority the twenty days it must provide service without adequate assurance under 366(b)." *Id.* at 625. Further, the court stated that the utility could have shut off the debtor when its adequate assurance became less than adequate. Finally, the court concluded that the utility could not, after the fact, be granted the inducement of an administrative priority where no inducement was required.

The Court disagrees with PSC's assertion that *In re Woodland* is distinguishable because it involved a commercial account and no negotiation of adequate assurance is to be provided in a residential account. Section 366 does not differentiate between commercial and residential accounts. Also, PSC apparently received adequate assurance of payment when it accepted a deposit prior to the first postpetition shutoff. On January 27, 1988, more than 40 days after the Debtors filed their petition, PSC accept-

ed a deposit of $240. Service was terminated on March 21, 1988. There has been no suggestion that an additional guarantee of administrative expense priority was discussed. There is no evidence that the postpetition modified budget billing payment plans entered into on March 21 and June 21, 1988, contained an agreement that PSC would receive an administrative priority for continued service nor did the Court approve an administrative priority for PSC.

The Court is not persuaded by *In re Watts*, 85 B.R. 470 (Bankr.S.D.Ohio 1988), cited by PSC for the position that an administrative expense priority is generally available to a utility as a matter of course. Therein the court allowed an administrative expense for only three months of the estimated ten months of utility service. There is no indication that a deposit was paid to the utility company in *In re Watts*. In addition, the case fails to make any reference to Section 366(b). Finally, the assertion that a utility should receive an administrative expense priority as a matter of course is incongruent with the legislative history of 366.

PSC's contention that furnishing utility service to the debtor is a necessary cost of preserving the estate thereby entitling it to an automatic administrative expense is without merit. As stated by the court in *In re Woodland, supra*, at 625, "post-petition suppliers whose performance was not induced by the debtor with an offer of administrative expense priority could not expect the Court to grant priority retroactively." Therefore, the Court maintains that PSC must operate within the ambit of 11 U.S.C. § 366 to obtain an administrative expense priority.

The Court is also not persuaded by PSC's argument that requiring a utility to negotiate an administrative priority would be unduly burdensome. Congress intended that utilities operate under the provisions in Section 366. If adequate assurance cannot be provided, shutting off utility service will indicate to the Court and the other credi-

tors that the debtor is not capable of meeting on-going expenses and most probably cannot reorganize.

■ Finally, the Court finds no merit in PSC's contention that the modified budget billing payment plans were executory contracts and their breach created an administrative expense. To qualify as an executory contract some significant performance must be due from both parties. The Debtors' only obligation was to pay for the utility service. Consequently, the relationship was no different than any open-account transaction.

■ As to the issue of whether PSC may set off the postpetition deposit with postpetition debt the Court finds that PSC is not restricted by either federal or state law from applying the deposit to bills for utility services due or past due after service is terminated.[1] *See, e.g.,* 4 Colo.Code Regs. § 723–3 Rule 11(g); *see generally, In re Woodland Corp., supra.*

As to PSC's request for a new deposit after conversion to Chapter 7, the Court finds that a utility may request modification of the adequate assurance of payment when the initial assurance provided is no longer adequate. Consequently, PSC may proceed with its termination remedies if it does not choose to enter into a modification agreement or is unable to agree on a reasonable modification and neither party requests the Court to order a reasonable modification pursuant to 366(b).

■ The Court finds that the deposit accepted by PSC effectively operated as adequate assurance of payment under Section 366. Thus, PSC is entitled to an administrative expense to the extent that the January deposit was insufficient to cover the 20 days that it had to provide service and it is not entitled to additional protection for the period between January 8, 1988, and June 30, 1988. Any amount of the claim for service which exceeds the deposit shall be

treated as prepetition debt under Section 348(d).

So Ordered.

---

1. This reference is to terminations based upon change of residence or entry of an order of conversion or nonpayment of a past due account.