**In the Matter of Clay B. STATMORE, Debtor.**

**Bankruptcy No. BK92–40243.**

United States Bankruptcy Court, D. Nebraska.

Jan. 9, 1995.

Victor E. Covalt, III, Lincoln, NE, for Lincoln Tel. and Tel. Co.

Richard J. Butler, Lincoln, NE, Trustee.

*MEMORANDUM*

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

Before the court is the Chapter 7 trustee's *Objection to Claim of Lincoln Telephone and Telegraph Company* ("LT & T") (Fil. # 177). I reject the trustee's argument that 11 U.S.C. § 366 limits the right of a utility

company to assert an administrative claim, and conclude that the post-petition claim of LT & T for telephone and advertising services shall be allowed as an administrative claim to the extent of benefit to the bankruptcy estate.

## FACTS

The debtor, Clay B. Statmore, is a sole practitioner in the Lincoln, Nebraska area. Mr. Statmore filed Chapter 13 bankruptcy on February 14, 1992. At the date of filing, Mr. Statmore was in debt to LT & T for pre-petition telephone services, which were allowed as an unsecured pre-petition claim. On September 25, 1992, the debtor contacted LT & T requesting credit to place an advertisement in the 1992–1993 telephone book. Mr. Statmore's requested advertisement was similar to advertisements purchased by him in the past. LT & T was aware that Mr. Statmore was in bankruptcy. LT & T agreed to place the advertisement for the debtor at a charge of $10,038.50. The debtor made a deposit of $7,500.00, and LT & T extended $2,538.00 in credit to the debtor, with monthly payments to be made by the debtor. The advertisement was published in the 1992–1993 telephone book. The debtor did not make any monthly payments on the debt. LT & T continued basic phone services for the debtor's business during the pendency of the bankruptcy case.

In January of 1993, the Chapter 13 bankruptcy case was converted to Chapter 7. LT & T filed a proof of claim for the unpaid post-petition 1992–1993 advertising charges and for post-petition business telephone services provided to the debtor. The total claim for post-petition debt is $3,028.12, with $739.01 of this amount secured by deposits on hand with LT & T, and $2,289.11 of this amount unsecured. LT & T asserts that the unsecured portion of its claim, $2,289.11, should be allowed as a § 503 administrative expense claim incurred during the Chapter 13 case. In response, the trustee argues that LT & T's claim should be allowed only as a general unsecured claim because claims for post-petition costs by utilities are governed exclusively by § 366. In the alternative the trustee argues that the claim should be disallowed

because the advertisement charges were not actual, necessary costs of preserving the estate.

## DISCUSSION

In a Chapter 13 business case, debts incurred by the debtor-in-possession after the case is commenced are allowed as administrative expenses entitled to priority in payment over claims of unsecured creditors if the debts arise in the ordinary course of the debtor's business and are "beneficial to the debtor-in-possession in the operation of business." *In re Ramaker,* 117 B.R. 959, 962 (Bankr.N.D.Ia.1990) (citations omitted). An administrative expense not only must arise post-petition, it also must benefit the bankruptcy estate. *In re Bellman Farms, Inc.,* 140 B.R. 986, 994 (D.S.D.1991). Furthermore, the benefit to the estate must be tangible; incidental benefit is not sufficient for an administrative expense. *Id.* at 995 (citations omitted); *Kinnan & Kinnan Partnership v. Agristor Leasing,* 116 B.R. 162, 166 (D.Neb. 1990). However, a successful reorganization is not required. *In re Ramaker,* 117 B.R. at 962.

Under § 364(a), a debtor-in-possession is authorized to incur debt and obtain credit in the ordinary course of business, and such debt will be allowed as an administrative expense under § 503(b)(1). 11 U.S.C. § 364(a) (1994). Unlike other provisions of the Bankruptcy Code granting a creditor superpriority, providing a creditor with adequate protection, and providing a creditor with adequate assurance, § 364(a) does not require court approval prior to the debtor incurring the post-petition debt in the ordinary course of business. *Compare* 11 U.S.C. § 364(a) (1994) *with* 11 U.S.C. §§ 364(b), (c), and (d), 361, and 366(b) (1994).

In this case, the Chapter 13 debtor-in-possession, Clay B. Statmore, incurred debt and obtained credit post-petition with LT & T. These expenses were incurred in the ordinary course of his law practice. Mr. Statmore had previously obtained similar advertising and telephone services with LT & T. Furthermore, telephone book advertising and telephone services are ordinary, necessary costs in the practice of law, and for

reorganization of that practice in bankruptcy, especially for a sole practitioner engaged in primarily consumer bankruptcy practice. Therefore, the post-petition debts owed by the debtor to LT & T should be allowed as administrative expenses under § 364(a), and consequently § 503(b)(1)(A), to the extent such services were beneficial to the bankruptcy estate.

### Advertising Services

The advertising services provided tangible benefit to the bankruptcy estate, notwithstanding the fact that Mr. Statmore ultimately lost money, was subsequently suspended from practice by order of the bankruptcy court, see *Matter of Statmore*, 176 B.R. 508 (Bankr.D.Neb.1994), and the Chapter 13 case was subsequently converted to Chapter 7. The advertisement was published and distributed to customers of LT & T. Therefore the debtor-in-possession received the tangible benefit of advertising exposure to LT & T customers which helped generate business for Mr. Statmore. The advertising services were reasonable and necessary for Mr. Statmore to gain exposure to new clients. Although the telephone book advertisement continued for a period well beyond the conversion to Chapter 7, this is the nature of telephone book advertising—the advertisements must be placed in advance, run in the telephone book for a year, and can not be withdrawn in the interim for nonpayment. The size and cost of the telephone book advertisement was reasonable in light of the previous practice of Mr. Statmore and the practice of attorneys in general, and the duration of the advertisement was reasonable in light of the nature of the advertising business. Therefore, I conclude that the portion of the claim of LT & T attributable to post-petition advertising services shall be allowed in full as an administrative claim, notwithstanding the fact that the Chapter 13 case ultimately failed.

### Telephone Services

The continuation of business telephone services was also beneficial to the operation of Mr. Statmore's practice and to the Chapter 13 reorganization effort. The telephone services allowed Mr. Statmore to continue in business and, as a result, generate income, however slight, for the payment of creditors. Some of this income was ultimately paid over to the Chapter 7 trustee after conversion. However, LT & T had the ability and the legal right (see section below) to terminate telephone services at the time the bankruptcy case was converted from Chapter 13 to Chapter 7, and this fact must be considered in the benefit analysis.

Charges for telephone services after the conversion of the case to Chapter 7 were of tangible benefit to the bankruptcy estate only to the extent that Mr. Statmore assisted the Chapter 7 trustee in collecting the accounts receivable which were property of the Chapter 7 bankruptcy estate. There is insufficient evidence before me to indicate any such benefit occurred post-conversion. I therefore conclude, based on the record before me, that charges for telephone services should be allowed as an administrative claim only with respect to charges preceding conversion to Chapter 7. This ruling is without prejudice to further applications of LT & T seeking allowance of post-conversion claims for telephone charges to the extent of tangible benefit to the Chapter 7 bankruptcy estate.

### Section § 366

The trustee argues that § 366 should be construed to bar the allowance of administrative expense claims by utilities under § 364. This position finds some support in decisional law. See *In re Martinez*, 92 B.R. 916 (Bankr.D.Co.1988). Section 366 provides that a utility may not discontinue service to a debtor on the basis that the party has filed bankruptcy, and must provide service for at least 20 days after the bankruptcy petition is filed, after which time services may be terminated if adequate assurance of payment is not provided by the debtor. 11 U.S.C. § 366 (1994). This section further provides that a party in interest may petition the court for modification of the amount of adequate assurance necessary to ensure payment. *Id.* Under this statutory scheme, the court in *In re Martinez* construed § 366 as limiting § 364 and providing the exclusive remedy for a utility where extension of credit or incurrence of debt post-petition was not induced

by a direct, affirmative promise of administrative expense priority. *In re Martinez,* 92 B.R. at 918–19. The court stated that it was not appropriate to induce performance by granting an administrative priority retroactively. *Id.* at 918 (citations omitted). As a result, the court in *In re Martinez,* limited the utility's administrative expense claim to the amount by which the deposit was insufficient to cover services required to be provided in the 20 days post-petition under § 366. *Id.* at 919.

I disagree with the interpretation of § 366 set forth by the court in *In re Martinez.* Such an interpretation is inconsistent with the statutory scheme of the Bankruptcy Code. Sections of the Bankruptcy Code should not be interpreted as limiting each other where they may be read consistently. The Bankruptcy Code does not expressly require a utility to comply with § 366 in order to receive administrative expense priority. The interpretation of § 366 as consistent with, rather than limiting, other sections of the Code granting administrative priority is supported in recent case law at the circuit level. See for example *Matter of Delta Towers, Ltd.,* 924 F.2d 74, 78 (5th Cir. 1991) (stating that failure to seek modification of adequate assurance under § 366 does not prevent the granting of an administrative expense under § 506(c)). Finally, by denying an administrative expense claim as inconsistent with § 366, *In re Martinez* encourages utilities to shut off service after 20 days to a debtor where the debtor is not in a position to provide adequate assurance of payment, thus interfering with the ability of the debtor to reorganize. Under *In re Martinez* the debtor must affirmatively grant an administrative priority to the utility in order for the utility to be entitled to such priority beyond 20 days post-petition. However, under § 364(a) a creditor who provides post-petition services to a debtor in the ordinary course of business is entitled to an administrative expense claim and the only qualification added by case law is that such services be beneficial to the debtor in the operation of business. Additional limitations or requirements of affirmative action should not be read into § 364(a). I hold that § 366 does not limit the availability of administrative expenses under § 364. Consequently, the argument of the trustee is overruled.

IT IS THEREFORE ORDERED, that the unsecured portion of the Proof of Claim of Lincoln Telephone and Telegraph Company attributable to post-petition advertising services is hereby allowed in full as a general administrative expense.

IT IS FURTHER ORDERED, that the unsecured portion of the Proof of Claim of Lincoln Telephone and Telegraph Company for telephone service provided between the commencement of the Chapter 13 case and its conversion to Chapter 7 is allowed as an administrative expense.