**In re BEST PRODUCTS CO., Debtor.**

**Bankruptcy No. 96–35267–T.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Oct. 25, 1996.

H. Slayton Dabney, Jr., McGuire, Woods, Battle & Boothe, Richmond, VA, for debtor.

Harvey R. Miller, Weil, Gotshal & Manges, New York City.

Gregg R. Nivala, Office of the United States Trustee, Richmond, VA.

Russell R. Johnson III, Richmond, VA.

James D. Kepley, Jr., Richmond, VA.

Gilbert L. Hamberg, Yardley, PA.

William D. White, Lepon McCarthy White & Holzworth, Washington, DC.

### MEMORANDUM OPINION

DOUGLAS O. TICE, JR., Bankruptcy Judge.

On October 21, 1996, the court held a hearing on the objections of numerous utilities[1] to the debtor's motion to provide adequate assurance of payment to the utilities pursuant to 11 U.S.C. § 366. The court then took the matter under advisement. The court will sustain the utilities' objections and require deposits as provided in this memorandum opinion.

### Findings of Fact and Procedural History

The debtor is a publicly owned corporation which operates 11 jewelry stores and 169 large retail outlets in shopping centers and malls throughout the country. The debtor sells category-dominant assortments of fine jewelry and watches, as well as nationally advertised brand-name merchandise. The debtor conducted this business as a retail catalog showroom chain until early 1996, when changes in the market increased the need for price flexibility and promotions. Although the debtor attempted to restructure its operations during the summer of 1996, its outdated format and the short-term negative effects of eliminating its catalog compelled the debtor to file for protection under Chapter 11.

The debtor filed its bankruptcy petition on September 24, 1996. That same day, the debtor moved for the entry of an order authorizing it to treat any post-petition debt incurred for utility services as an administrative expense. The debtor represented to the court that it possessed a good payment history with the utilities and that, to its knowledge, no defaults or arrearage existed with respect to any undisputed invoices. The court granted the debtor's motion with the condition that any utility could seek further assurance under § 366 by filing a written objection by October 15. The order also included an injunction prohibiting the utilities from altering, refusing to provide, or discontinuing services to the debtor's facilities.

Numerous utilities in fact did object to the order. They argued that, insofar as the Bankruptcy Code already guarantees them

---

1. The objecting utilities include BellSouth Telecommunications, Southern California Edison, Pacific Gas & Electric, Potomac Electric Power, Bell Atlantic—New Jersey, Inc., Bell Atlantic—Maryland, Inc., Bell Atlantic—Virginia, Inc., Bell Atlantic—West Virginia, Inc., Bell Atlantic—District of Columbia, Inc., Bell Atlantic—Pennsylvania, Sacramento Municipal Utility District, Virginia Electric & Power Company, American Electric Power, Jersey Central Power & Light Company, Metropolitan Edison Company, PECO Energy Company, City Public Service, San Antonio, Northern Virginia Electric Co-op, Public Service Electric & Gas Company, Carolina Power & Light Company, Duke Power Company, Texas Utilities Electric Company, Consumers Power Company, San Diego Gas & Electric, Baltimore Gas & Electric Company, The Dayton Power And Light Company, and the Salt River Project.

administrative priority for services provided post-petition, the adequate assurance required by § 366 had not been offered. In addition, they contended that § 366 requires adequate assurance to be furnished particularly in the form of a deposit or other security. Finally, the utilities objected to the court issuing any injunction under 11 U.S.C. § 105 which would preclude them from terminating service under state law for any post-petition default.

### Discussion and Conclusions of Law

■ Section 366(b) permits a utility to "alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date." The debtor maintains that administrative priority will suffice as "adequate assurance" under the section. This argument, however, appears to go against both the section's legislative history as well as its express language in the context of the Code as a whole.

Many courts which have liberally construed the term "adequate assurance" have cited the House Report on § 366. *See, e.g., In re Santa Clara Circuits West, Inc.*, 27 B.R. 680, 684 (Bankr.D.Utah 1982). This report stated that, "if an estate is sufficiently liquid, the guarantee of an administrative expense priority may constitute adequate assurance of payment for future services." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 350 (1977). The language proposed in the Senate and the House, however, differed significantly with regard to the duty to provide adequate assurance. *See Virginia Elec. & Power Co. v. Cunha (In re Cunha)*, 1 B.R. 330, 332 (Bankr.E.D.Va.1979). While the House version specified only that "adequate assurance" be given, H.R. 8200, 95th Cong., 2d Sess. (1978), the Senate bill stated that such assurance be given "in the form of a deposit or other security." S. 2266, 95th Cong., 2d Sess. (1978). This limiting language in the Senate version, which contemplated that more than mere administrative priority be furnished, found its way into the final version of § 366. I therefore must conclude that the comment in the House Report carries only negligible weight in interpreting the section and that, moreover, the Congress appears to have explicitly rejected the House's construction of "adequate assurance" by enacting the Senate language.

■ A contextual reading of § 366 also evinces that a debtor must provide its utility providers with more than administrative priority. 11 U.S.C. § 507(a) gives first priority to administrative expenses allowed under 11 U.S.C. § 503(b), which in turn includes "the actual and necessary costs and expenses of preserving the estate." Particularly in the context of a Chapter 11 retail debtor, post-petition utility service constitutes an actual and necessary cost of preserving the assets of the estate and must be treated as an administrative expense. *See In re Finevest Foods, Inc.*, 140 B.R. 581, 584 (Bankr. M.D.Fla.1992); *see also In re Statmore*, 177 B.R. 312 (Bankr.D.Neb.1995). Therefore, even if § 366 did not exist, the utilities would be entitled to this priority under the Code.

In enacting § 366, Congress sought to strike a balance between the general right of a creditor to refuse to do business with a debtor post-petition and the coercive nature of such a move by a debtor's utility. *See Hanratty v. Philadelphia Elec. Co. (In re Hanratty)*, 907 F.2d 1418, 1424 (3d Cir.1990); *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 85 (3d Cir.1988). Section 366(b) thus requires a debtor, in consideration for its utilities being unable to refuse post-petition service, to provide some additional assurance of payment "in the form of a deposit or other security." If Congress believed that the administrative priority already bestowed upon the utilities would suffice, then it had no need to carve out the exception in subsection (b) of § 366 to the general rule of non-discrimination in subsection (a).

■ Moreover, in the absence of a statutory definition, this court must construe the term "other security" in accordance with its ordinary or natural meaning. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 476–78, 114 S.Ct. 996, 1001, 127 L.Ed.2d 308 (1994). In the utility context, courts appear to have implicitly construed the term "other securi-

ty" to mean prepayment of bills, shortened payment deadlines, a letter of credit, a surety bond, or some similar financial device. *See, e.g., In re 499 W. Warren Street Assocs. Ltd. Partnership,* 138 B.R. 363 (Bankr.N.D.N.Y. 1991); *In re Smith, Richardson & Conroy, Inc.,* 50 B.R. 5 (Bankr.S.D.Fla.1985); *Niagara Mohawk Power Corp. v. Utica Floor Maintenance, Inc. (In re Utica Floor Maintenance, Inc.),* 31 B.R. 509 (Bankr.N.D.N.Y. 1983); *In re Cunha,* 1 B.R. 330, 333 (Bankr. E.D.Va.1979); *In re Stagecoach Enters., Inc.,* 1 B.R. 732, 734 (Bankr.M.D.Fla.1979).

■ I hold, therefore, that adequate assurance under § 366 requires more than administrative priority. A question remains, however, as to its form and amount in this case. The objecting utilities each have demanded a deposit equal to the debtor's bill for two months of service. Under § 366, the utilities have a right to the deposit as demanded unless the debtor can show cause to reduce it. *In re Norsal Indus., Inc.,* 147 B.R. 85, 89 (Bankr.E.D.N.Y.1992). Once the debtor proffers a sufficient objection, the court must fix a reasonable security after notice and a hearing. *Tarrant v. City of Douglas, Georgia (In re Tarrant),* 190 B.R. 704, 708 (Bankr.S.D.Ga.1995). In doing so, the court should consider the debtor's payment history, the debtor's net worth, and the debtor's present and future ability to pay post-petition obligations. *In re 499 W. Warren Street Assocs. Ltd. Partnership,* 138 B.R. at 366.

■ As indicated in my findings of fact, the debtor represented that it has made its payments regularly, that no default has occurred, and that no arrearage exists. The utilities presented no evidence at the hearing which contradicts these assertions. Moreover, current figures and projections indicate that the debtor is and will remain administra-

tively solvent. The court has authorized the debtor to obtain a revolving credit and a letter of credit facility of up to $250,000,000, and the debtor recently sold an agency contract to liquidate 81 of its stores for approximately $150,000,000. In this light, I will require the debtor to provide each objecting utility with adequate assurance in the form of a deposit equal to one-half of the average monthly bill for each of the debtor's facilities serviced by the objecting utilities, as calculated from the monthly bills received by that facility over the last twelve months.[2]

■ The final issue which the court must address is the status of the injunction included in my September 24, 1996, order providing adequate assurance to utility companies. Fed.R.Bankr.P. 7001(7) plainly requires that any request for an injunction or other equitable relief must be sought in the context of an adversary proceeding. Since the debtor has not filed the requisite action, I cannot enjoin any utility from pursuing its rights under state law should the debtor default in its payments post-petition.[3] *See Begley v. Philadelphia Elec. Co.,* 760 F.2d 46 (3d Cir.1985) (affirming a utility's right to proceed under state law in the event of post-petition default); *see also In re Monroe Well Serv., Inc.,* 83 B.R. 317, 322 (Bankr.E.D.Pa.1988).

A separate order will be entered sustaining the utilities' objections.

---

2. The debtor indicated at the hearing that four of the objecting utilities may have obtained deposits or may have established accelerated payment schedules pre-petition. The deposit required by the court today shall be in addition to any such pre-petition arrangements.

3. Several parties at the hearing expressed concern that language in my order approving the debtor's sale of the agency contract amounted to

an injunction under 11 U.S.C. § 105. They pointed to the section of that order which stated: "ORDERED that no person or entity shall take any action to prevent, interfere with, or otherwise enjoin consummation of the Store Closing Sales...." I do not read this language, however, as preventing any party from pursuing its rights in this court or in any other appropriate forum.