117 F.3d 646
 65 USLW 2819, 38 Collier Bankr.Cas.2d 128,
30 Bankr.Ct.Dec. 1228, Bankr. L. Rep. P 77,510
 VIRGINIA ELECTRIC & POWER COMPANY; Jersey Central Power &
Light Company; Yankee Gas Services Company; Public Service
Electric & Gas Company; Baltimore Gas & Electric Company;
Orange & Rockland Utilities Inc.; Niagara Mohawk Power
Corp.; and Consolidated Edison Company of New York, Inc., Appellants,
v.
CALDOR, INC.-NY; The Caldor Corporation; Caldor,
Inc.-Cal-Leasing, Inc.; Cal-Silver Spring L.L.C.; Calfax;
Lacdor Realty Corp.; Premier Service Programs, Inc.; and
Tri-State Advertising Agency, Inc.;, Appellees.
 No. 96-5096.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 25, 1997.
Decided June 10, 1997.
 
 Paul B. Phinney III, Pearl River, NY, Russell R. Johnson III, Richmond, VA, for Appellants.
 Michael J. Crames (Stephen W. Milo, Benjamin Mintz, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City), for Appellees.
 Before: VAN GRAAFEILAND, MESKILL, and CABRANES, Circuit Judges.
 JOSE A. CABRANES, Circuit Judge.
 
 
 1
 Appellees ("Caldor") filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq., on September 18, 1995. Appellants are eight of Caldor's utility suppliers ("Utilities"), who appeal a decision of the United States District Court for the Southern District of New York (Sidney H. Stein, Judge), affirming an order of the United States Bankruptcy Court for the Southern District of New York (James F. Garrity, Judge), enjoining the Utilities from refusing, altering or terminating service to Caldor pending the approval of Caldor's plan for reorganization. The bankruptcy court determined that, in light of Caldor's prepetition payment history and their postpetition liquidity, the Utilities had "adequate assurance of payment" for their continued service, as required under 11 U.S.C. § 366(b) (" § 366(b)"),[1] with the following safeguards in place: (1) an "administrative expense priority"; (2) an expedited procedure for relief in the event of a payment default by Caldor; and (3) an order requiring Caldor to convey their monthly operating statements directly to the Utilities. The Utilities urge on appeal that these safeguards cannot, as a matter of law, satisfy § 366(b)'s requirement that utility suppliers enjoy an "adequate assurance of payment, in the form of a deposit or other security." Id. (emphasis supplied). The three safeguards put into place by the bankruptcy court, the appellants contend, do not fall within the definition of a "deposit or other security" traditionally employed in the "utility/customer" context. In any event, the Utilities urge, these safeguards were otherwise available to them in the normal course and, therefore, cannot alone meet the "deposit or other security" requirement.
 
 
 2
 We hold that, even assuming that the forms of payment assurance ordered by the bankruptcy court were otherwise available to the Utilities, they do not fail as a matter of law to satisfy § 366(b)'s requirement that utility suppliers receive "adequate assurance of payment" from debtors in bankruptcy.I.
 
 
 3
 The appellees together form a substantial retail enterprise in the eastern United States. On September 18, 1995, they filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. This case arises from their efforts to ensure continued utility services between the time of the filing of their Chapter 11 petition and the ultimate approval of their reorganization plan.
 
 
 4
 Section 366(a) of the Bankruptcy Code, 11 U.S.C. § 366(a),[2] prohibits utility suppliers from altering or discontinuing services to a customer because the customer files for bankruptcy. Section 366(b), however, establishes an exception to this prohibition in cases where the debtor fails to provide its utility suppliers, within the first twenty days after the debtor files its petition in bankruptcy, with "adequate assurance" that the debtor will continue to meet its payment obligations to the supplier. This subsection provides, specifically, that a "utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date." 11 U.S.C. § 366(b) (emphasis supplied). If the debtor and its utility fail to agree as to what will constitute "adequate assurance," however, either party may file a motion requesting the bankruptcy court to settle the question: "On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment." 11 U.S.C. § 366(b); see also 3 COLLIER ON BANKRUPTCY p 366.03, at 366-3 to -4 (1997).
 
 
 5
 Here, Caldor claims, the sheer number of its utility suppliers, comprising more than 400 utility companies, made it difficult for it to engage in negotiations to provide each supplier with the "adequate assurance of payment" necessary to guarantee continued service under § 366. Caldor explains that it was also concerned that, if it were to engage in separate negotiations with its utility providers, the utilities would capitalize on Caldor's vulnerable position by requiring unreasonably high security deposits. Accordingly, on September 26, 1995, Caldor bypassed the negotiations contemplated by § 366 and filed an application with the bankruptcy court, seeking to enjoin its many utility suppliers from altering or discontinuing service pending confirmation of Caldor's Chapter 11 reorganization plan. Caldor urged in its application that its utility suppliers be so enjoined without requiring Caldor to post any "deposit or other security." Caldor maintained that, in light of its $250 million "debtor-in-possession financing facility," its utility suppliers would have "adequate assurance of payment" in the "administrative expense priority" for which they are eligible under §§ 503(b)(1)(A)[3] and 507(a)(1)[4] of the Bankruptcy Code.
 
 
 6
 Following a hearing on November 16, 1995, at which twenty-two utility suppliers who wished to challenge Caldor's proposed order ("Objecting Utilities") appeared, the bankruptcy court granted Caldor's request to extend the 20-day period during which utilities cannot cancel or alter service to run until the time that Caldor's reorganization plan is confirmed. Citing Caldor's prepetition payment history and its postpetition financial condition, the court found that Caldor "is probably the best risk customer available to the utilities," and concluded that there was "no reason to doubt that [Caldor's] prepetition history of making [utility] payments on a [timely] and current basis [would] not continue postpetition." Accordingly, the court agreed with Caldor that the utility suppliers enjoyed "adequate assurance of payment" without any "deposit or other form of security." Instead, the bankruptcy court directed that each of Caldor's utilities be afforded administrative expense priorities under §§ 503(b) and 507(a); provided for an expedited process whereby Objecting Utilities may petition the court for immediate payment and for an order requiring Caldor to post a deposit in the event that Caldor defaults on any utility payment; and ordered Caldor to provide counsel for each Objecting Utility with copies of Caldor's monthly operating statements within two business days after each statement is filed with the bankruptcy court. The bankruptcy court concluded that, with these safeguards in place, "the utilities are adequately protected without the payment of [any] deposits."
 
 
 7
 Thirteen of the twenty-two Objecting Utilities challenged the bankruptcy court's order in the district court pursuant to 28 U.S.C. § 158(a). They did not contest the bankruptcy court's findings of fact, including its determination that the safeguards it put into place provide the Objecting Utilities with "adequate assurance of payment." Rather, the thirteen utility suppliers argued that § 366(b) requires a debtor to post some "deposit or other security" to "adequate[ly] assur[e]" payment of its postpetition utility bills, and that the bankruptcy court erred as a matter of law in directing them to continue their service to Caldor without an assurance of payment in this prescribed form.
 
 
 8
 In an Opinion and Order filed July 10, 1996, Judge Stein rejected the Utilities' reading of § 366(b). See In re Caldor, Inc., 199 B.R. 1 (S.D.N.Y.1996). Rather than adopt the reasoning of the bankruptcy court that Caldor was not being required to post any security or other deposit, however, the district court read the term "other security" to include the safeguards provided by the bankruptcy court. Id. at 3. To read the term "other security" so that it does not encompass such safeguards, the court explained, would be to restrain unreasonably a bankruptcy court's much-needed flexibility in fashioning utility-debtor security arrangements. Id.
 
 
 9
 The Utilities, eight of the thirteen Objecting Utilities that challenged the bankruptcy court's decision in the district court, here appeal from the judgment entered by the district court on the basis of Judge Stein's Opinion and Order upholding that decision. They claim that, because the phrase "other security" is not defined in the statute,[5] the phrase should be given its "ordinary and customary meaning," which, in the "utility/customer" context, is "prepayment or expedited payment of bills, a letter of credit, surety bond or some similar device." Brief for Appellants at 9-10. None of the safeguards put into place by the bankruptcy court, the Utilities contend, falls within this definition. In any event, the Utilities urge, they would have been entitled to an administrative expense priority as a matter of course; § 366(b) itself already provides them with a default procedure similar to what the bankruptcy court put into place;[6] and they could obtain copies of Caldor's monthly operation reports on their own through the bankruptcy court or the United States Trustee. See Brief for Appellants at 6, 13-16. The Utilities argue that what is otherwise available to a utility supplier in the normal course cannot, without rendering § 366(b) "superfluous, meaningless and ineffective," constitute a "deposit or other security." Id. at 16, 27-28.
 
 
 10
 Caldor does not here challenge the Utilities' claim that the three safeguards provided by the bankruptcy court were otherwise available to Caldor's utility suppliers in the normal course. Rather, they contend that either (1) "other security" must be read to include these safeguards, as Judge Stein reasoned; or (2) the concluding sentence of § 366(b), which confers upon the bankruptcy court the authority to modify the amount of any "deposit or other security," necessarily permits the court, in appropriate circumstances, to excuse a debtor from the "deposit or other security" requirement altogether.
 
 II.
 
 11
 "This court exercises the same review over the district court's decision that the district court may exercise [over the bankruptcy court's decision]." See In re Ionosphere Clubs, Inc., 922 F.2d 984, 988 (2d Cir.1990) (internal quotation marks omitted) (alteration in original), cert. denied, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). As the appellants here challenge the district court's decision on a matter of law, we review their claims de novo. Id.
 
 
 12
 Without a doubt, the bankruptcy court did not here require Caldor to post a "deposit" with its utility suppliers. Accordingly, if any of the safeguards that the bankruptcy court did require in the instant case are to qualify as a "deposit or other security," they must constitute a form of "other security." The Utilities contend that they do not--that "other security" is properly defined to include only "prepayment or expedited payment of bills, a letter of credit, surety bond or some similar device," none of which were required by the bankruptcy court here. Brief for Appellants at 9-10. Yet this definition, borrowed from a bankruptcy court's decision in In re Best Prods. Co., 203 B.R. 51, 53-54 (Bankr.E.D.Va.1996) (citing cases), is itself derived merely from what a series of courts have in fact provided as safeguards. Neither Best nor any of the decisions that Best relies upon for this definition purported to define "other security," let alone to provide a comprehensive definition of the phrase.
 
 
 13
 In any event, we need not decide whether this, or some other, strict definition of "other security" is most appropriate, or whether the term is best read more broadly, as the district court did, to encompass any form of safeguard that a bankruptcy court determines would help to assure a utility supplier of continued payment. Even assuming that "other security" should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to "modify" the level of the "deposit or other security," provided for under § 366(b), includes the power to require no "deposit or other security" where none is necessary to provide a utility supplier with "adequate assurance of payment." Cf. Ferguson v. Tabah, 288 F.2d 665, 675 (2d Cir.1961) (stating that district court has discretion to require no security under FED.R.CIV.P. 65(c) provision that applicant post security for preliminary injunction "in such sum as the court deems proper").
 
 
 14
 Bankruptcy courts are properly afforded significant discretion in the exercise of their duties. We have observed that "in bankruptcy proceedings substance should not give way to form," and "a bankruptcy judge must not be shackled with unnecessarily rigid rules when exercising the undoubtedly broad administrative power granted him under the [Bankruptcy] Code." In re Financial News Network Inc., 980 F.2d 165, 169 (2d Cir.1992) (internal quotation marks omitted) (alteration in original). In deciding what constitutes "adequate assurance" in a given case, a bankruptcy court must "focus upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." In re Penn Jersey Corp., 72 B.R. 981, 985 (Bankr.E.D.Pa.1987) (emphasis supplied). Accordingly, "bankruptcy courts must be afforded reasonable discretion in determining what constitutes 'adequate assurance' of payment for continuing utility services." In re Utica Floor Maintenance, Inc., 25 B.R. 1010, 1013 (N.D.N.Y.1982). The Utilities do not challenge the bankruptcy court's finding that the safeguards employed in the instant case, without more, provide them with "adequate assurance of payment." To hold that these safeguards are nevertheless inadequate as a matter of law--merely because they do not fall within the Utilities' or some other definition of "deposit or other security"--would be to say that the bankruptcy court here could have satisfied § 366(b)'s requirements merely by adding a fourth, purely nominal safeguard of a type that meets the asserted definition. We decline to adopt a reading of the statute that would so raise form over substance and "shackle" the bankruptcy courts with "unnecessarily rigid rules."
 
 
 15
 Our reasoning is no different if, as the Utilities contend, the three safeguards employed here were otherwise available to them in the normal course.[7] We conclude that--whether because the phrase "other security" is read to include safeguards that are otherwise available to a utility supplier under the Bankruptcy Code, or because a bankruptcy court has the authority to require no "deposit or other security" at all--the bankruptcy court need not require some additional safeguard where it determines that safeguards otherwise available under the Code provide the "adequate assurance of payment" with which § 366(b) is ultimately concerned. A leading authority in the field thus concludes that,
 
 
 16
 [s]ince an administrative priority will be available to the utility as a matter of course, it is suggested that something more may be required, at least in some cases [to satisfy § 366(b) ].... On the other hand, administrative priority may well be sufficient if there appears to be little or no risk to the utility company and current payments are being met.
 
 
 17
 3 COLLIER ON BANKRUPTCY, supra, p 366.03, at 366-4 (emphasis supplied); see also, e.g., In re Marion Steel Co., 35 B.R. 188, 199 (Bankr.N.D.Ohio 1983) (noting that administrative expense priority may alone constitute "adequate assurance of payment" under § 366(b)); In re Santa Clara Circuits West, Inc., 27 B.R. 680, 684 & n. 1 (Bankr.D.Utah 1982) (same); Penn Jersey Corp., 72 B.R. at 986 (recognizing with favor cases indicating that administrative expense priority may alone constitute "adequate assurance of payment"); In re Utica Floor Maintenance, 25 B.R. at 1018 (holding that combination of administrative expense priority and guarantee from bankruptcy court that it will modify security terms if debtor defaults on utility payments constitutes "adequate assurance of payment" where debtor's estate is sufficiently substantial and liquid). But see Best Prods., 203 B.R. at 53-54 (holding that administrative expense priority cannot alone constitute "adequate assurance of payment").[8]
 
 
 18
 Nor do we find merit in the Utilities' contention that our reading of § 366(b)--so that "adequate assurance of payment" may in some circumstances be limited to remedies otherwise available to a utility supplier under the Bankruptcy Code--renders § 366(b) "superfluous, meaningless [or] ineffective." Brief for Appellants at 27-28; see also Best Prods., 203 B.R. at 53 ("If Congress believed that the administrative priority already bestowed upon the utilities would suffice, then it had no need to carve out the exception in subsection (b) of § 366...."). That "adequate assurance of payment" might in certain, exceptional cases require nothing more than what the Code already provides, does not render unnecessary or superfluous § 366(b)'s provision that there be "adequate assurance" in all cases--a provision that may indeed require something more in other (if not most) circumstances.
 
 III.
 
 19
 To summarize: we reject the Utilities' contention that the safeguards put into place to provide them with "adequate assurance of payment" fail as a matter of law to meet the requirements of § 366(b). We reach this conclusion even if we assume, as the Utilities urge, that these safeguards were otherwise available to Caldor's utility suppliers in the normal course.
 
 
 20
 Accordingly, we affirm the judgment of the district court affirming the order of the bankruptcy court.
 
 MESKILL, J., concurring:
 
 21
 I concur in the majority's decision to affirm the judgment of the district court affirming the order of the bankruptcy court. I do so on the narrow ground that the term "other security" includes, at a minimum, the requirement imposed by the bankruptcy court that Caldor provide the Utilities with copies of Caldor's monthly operating statements promptly after Caldor files the statements with the bankruptcy court. Although the Utilities contend that this measure cannot constitute security because the statements were otherwise available to the Utilities, the bankruptcy court's order provides the Utilities with prompt and inexpensive access to the statements, something the Utilities did not have before the bankruptcy court's order. Further, the statements provide the Utilities with "security," as that term is commonly understood, because the Utilities will be kept well informed of Caldor's financial condition and will be able to protect themselves should Caldor's financial situation worsen.
 
 
 
 [1]
 11 U.S.C. § 366(b) provides that
 [a] utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.
 
 
 [2]
 11 U.S.C. § 366(a) provides that
 Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
 
 
 [3]
 11 U.S.C. § 503(b)(1)(A) defines "administrative expenses" to include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case."
 
 
 [4]
 11 U.S.C. § 507(a) states the priority accorded by law to claims against the debtor in bankruptcy. First among these are "administrative expenses allowed under section 503(b) of this title."
 
 
 [5]
 The Bankruptcy Code does define the term "security," see 11 U.S.C. § 101(49), but this definition is inapplicable in the context of § 366(b), and neither of the parties to this action has suggested that § 101 provides the governing definition
 
 
 [6]
 The final sentence of § 366(b) provides that, "[o]n request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."
 
 
 [7]
 Caldor does not challenge this contention, and, accordingly, we need not decide whether, and to what extent, the safeguards employed here would otherwise have been available to the Utilities. Although not relevant to our decision, we do note that, as the Utilities themselves concede, the streamlined default procedure put in place by the bankruptcy court may provide relief, in the event of a Caldor payment default, "slightly faster" than the procedure set out in § 366(b). See Brief for Appellants at 16. The monthly operation reports as well, although apparently otherwise available to the Utilities, are conveyed directly to the Utilities under the bankruptcy court's order. We recognize, too, that some bankruptcy courts have refused to grant an administrative expense priority to a utility supplier that did not obtain the priority as part of its "adequate assurance of payment" under § 366(b). See, e.g., In re Martinez, 92 B.R. 916, 918 (Bankr.D.Colo.1988); In re Woodland Corp., 48 B.R. 623, 625 (Bankr.D.N.M.1985). But see, e.g., In re Statmore, 177 B.R. 312, 314-15 (Bankr.D.Neb.1995)
 
 
 [8]
 The Utilities urge that the Utica Floor and Santa Clara decisions are fatally flawed insofar as they rely on language accompanying a version of § 366(b) in the House Judiciary Committee Report ("House Report") to the effect that: "If an estate is sufficiently liquid, the guarantee of an administrative expense priority may constitute adequate assurance of payment for future services." H.R.REP. NO. 95-595 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News, at pp. 5963, 6306. As the Utilities point out, the House Report accompanied a version of § 366(b) that lacked the "deposit or other security" language included in the ultimate bill. It was the Senate version of the legislation that added this phrase, and the Senate Judiciary Committee Report ("Senate Report") nowhere indicates that an administrative expense priority could alone satisfy the "adequate assurance" requirement. The Senate Report, however, does not mention the "deposit or other security" language contained in its version of the bill. The report notes merely that "[s]ubsection (b) protects the utility company by requiring the trustee or the debtor to provide ... adequate assurance of payment for service provided after the date of the petition." SEN.REP. NO. 95-989 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News, at pp. 5787, 5846. A leading commentator, relying on both committee reports, concludes that "[t]he legislative history suggests that, in some cases, a simple administrative priority will constitute adequate security." 3 COLLIER ON BANKRUPTCY, supra, p 366.03, at 366-4