**MEMPHIS LIGHT, GAS & WATER DIVISION, Appellant,**

v.

**Earnestine FARLEY, Appellee.**

**No. 91–2295–TUB.**

United States District Court, W.D. Tennessee, W.D.

Sept. 5, 1991.

Charlotte A. Knight, MLG & W, Memphis, Tenn., for appellant.

Irving Zeitlin, Memphis, Tenn., for appellee.

## ORDER

TURNER, District Judge.

The matter presently before the court comes by way of an appeal from the United States Bankruptcy Court following its entry of an Opinion and Order Granting Motion for Utility Services filed December 19, 1990. There is no dispute between the parties as to the final nature of the order entered by the bankruptcy court and the matter is now properly presented to this court.

The issue raised by Appellant/Creditor, Memphis Light, Gas & Water Division ("MLG & W"), a utility company which has monopoly rights to provide light, gas, water and sewer services throughout the City of Memphis, is that the bankruptcy court erred in granting the Appellee/Debtor's motion for utility services and compelling MLG & W to file a special administrative claim for post-petition illegal use and damages owed by the Appellee/Debtor, Earnestine Farley ("Farley"), and to turn on utility services for Farley upon payment of a $75.00 deposit.

Bankruptcy Rule 8013 compels the standard of appellate review in this case which requires that fact findings shall not be set aside unless clearly erroneous. Issues of law are reviewed de novo. *Rubenstein v. Ball Bros., Inc. (In re New England Fish Co.)*, 749 F.2d 1277 (9th Cir. 1984).

The facts may be succinctly stated and, since neither party has filed a transcript of the proceedings before the bankruptcy court, these facts are conclusive for purposes of this appeal.

Farley filed her Chapter 13 petition on September 13, 1990, and subsequently filed a Motion for Utility Services on October 16, 1990. MLG & W objected to Farley's attempt to require it to file a claim for its post-petition indebtedness arising out of Farley's illegal use of utility equipment and thereby forcing MLG & W to reconnect utility services upon payment of the regular security deposit pursuant to the provisions of 11 U.S.C. § 366(b). A hearing was conducted on November 27, 1990, at which

Farley testified. MLG & W also offered witnesses.

The bankruptcy court ruled that pursuant to its equity power it would require MLG & W to restore utility services upon Farley's payment of a $75.00 deposit and would allow restitution of the post-petition debt for illegal use and damages to be made through the plan as a special administrative class debt.

The underlying facts reflect that Farley's utility services at her residence had been disconnected during the month prior to her filing of a Chapter 13 petition which was followed by Farley's request to MLG & W to have her utility services reconnected. MLG & W sent its employee to reconnect the utility services but upon arrival discovered the utility services had been illegally connected causing damage to equipment and services which were being illegally used at the residence. The damages created a dangerous condition and utility services were then disconnected to remove the dangerous condition and to prevent additional illegal use.

MLG & W thereafter declined to restore utility services unless Farley made full restitution for the post-petition illegal use and damages in the amount of $654.34 in accordance with its regular policy.

Farley declined to pay this demand and filed her Motion for Utility Services. At the hearing on the motion, Farley testified that she had arranged for a neighbor to illegally connect her utility services after they had been disconnected for non-payment and that she had full knowledge of the criminal nature of her actions. She further testified that her monthly income consisted of $100.00 from AFDC, $386.00 in supplementary security income payments, and $69.00 in food stamps. She has no funds with which to make any additional payments toward her Chapter 13 plan.

MLG & W offered uncontradicted testimony that Farley had pre-petition debt for legal use of services in the amount of $371.43, pre-petition illegal use in the amount of $51.76, and post-petition illegal

use and damages in the amount of $654.34. It was also testified that the illegal connection created conditions dangerous to Farley, her family, MLG & W employees, and the general public.

The bankruptcy court found that MLG & W had lawfully and properly refused to restore utility services to Farley's residence unless she made full restitution of the charges for post-petition illegal use and damages, but then elected to exercise equity power to compel MLG & W to restore the utility services to Farley's residence following her payment of only a $75.00 security deposit and further requiring MLG & W to file a claim for Farley's post-petition illegal use and damages as a special administrative claim so that restitution could be made through the Chapter 13 plan.[1]

■ As noted, these facts are established without dispute for the purposes of this appeal. The only question for the court's determination is whether or not the law allows the court to order a monopoly utility service to reinstate services despite the debtor's admitted illegal use of services both pre- and post-petition which the debtor either refuses or is unable to pay on an immediate basis.

11 U.S.C. § 366 provides that:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title [11 USCS §§ 101 et seq.] or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hear-

1. At oral argument, the parties agreed that Farley has never paid the utility deposit and the

services have therefore not been reinstated to date.

ing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

Section (a) of this statute prohibits a utility company from refusing to provide future services during the existence of the plan solely because of the debtor's pre-petition debt for services rendered. Section (b) of this statute, however, allows the utility to avoid this duty of reinstatement or continued service if the debtor or the trustee fails to furnish, within 20 after days after the order of relief, adequate assurance of payment for future services. Section (b) is an exception to the requirements of section (a) and not a separate provision of the statute which authorizes the court to order the reinstatement of services when a post-petition debt is owed by the debtor. Section 366(b) does not authorize the bankruptcy court to require a utility to reinstate services despite the nonpayment of a post-petition indebtedness.

In addition, most of the courts that have addressed the issue have correctly found that section 366(a) does not apply in a case where the pre-petition debt was incurred because of illegal use and tampering with utility services. It follows that a utility service is not prohibited under section 366(a) from requiring restitution of damages and lost services incurred as a result of post-petition illegal usage. *Hendrickson v. Philadelphia Gas Works*, 672 F.Supp. 823 (E.D.Pa.1987); *In re Morris*, 66 B.R. 28 (E.D.Mich.1986).

Under the law as it is now written, a utility company has the lawful authority to refuse service "to any debtor for any reason which would validly constitute a ground for refusal if that debtor were not in bankruptcy, with the single exception of non-payment for past services." *In re Webb*, 38 B.R. 541 (Bkrtcy.E.D.Pa.1984).

The courts that have addressed the question have recognized that the possibility of endangerment to the public, the debtor, the debtor's family, and employees of the utility company is a factor that cannot be overlooked in weighing the need of the utility company to exercise deterrent action for such illegal use.

It may well be that Farley will be unable to maintain the plan envisioned by her Chapter 13 filing in this case without the availability of utility services which is the result of the utility's refusal to reinstate services pending payment. As noted, MLG & W is the only utility in this area and Farley simply does not have additional funds at this time from her welfare payments with which to meet the requirements of the utility for restitution. Yet, the failure of the plan is not the only factor that must be taken into consideration. There is an admitted illegal use of electrical utilities in a highly dangerous fashion. The utility service is entitled to seek deterrence of such conduct and no law enacted by Congress authorizes the court to force the utility to enter into a future services contract under these circumstances. The same may be said with respect to the equities of this situation. Equity does not enable the court to order this utility to provide services to one who has refused to pay for post-petition illegal usage and damage.

The court is of the opinion that the order of the United States Bankruptcy Court should be reversed and that the Motion for Utility Services filed by Farley should be denied in its entirety.

IT IS SO ORDERED.