Ann C. JONES, Debtor.

Ann C. Jones, Appellant,

v.

Boston Gas Company d/b/a Keyspan Energy Delivery New England, Appellee.

BAP No. MB 06–056.
Bankruptcy No. 06–10105–RS.

United States Bankruptcy Appellate Panel for the First Circuit.

June 8, 2007.

David G. Baker, Esq. on brief for Appellant.

Christopher S. Aronson, Esq. and Elisa M. Pugliese, Esq., on brief for Appellee Boston Gas Company d/b/a Keyspan Energy Delivery New England.

George W. Tetler III, Esq. and Mark W. Powers, Esq. of Bowditch & Dewey, LLP and Russell R. Johnson III, Esq., on brief for amici curiae Appalachian Power Company, Baltimore Gas & Electric Company, Columbus Southern Power Company, Commonwealth Edison Company, The Connecticut Light and Power Company, Connecticut Natural Gas Corporation, The Detroit Edison Company, Granite State Electric Company, Indiana/Michigan Power Company, Kentucky Power Company, Kingsport Power Company, Massachusetts Electric Company, Michigan Consolidated Gas Company, Naragansett Electric Company, New York State Electric and Gas Corporation, Niagara Mohawk Power Corporation, Ohio Power Company, PECO Energy Company, Public Service Electric and Gas Company, Public Service Company of New Hampshire, Public Service Company of Oklahoma, Rochester Gas and Electric Company, The Southern Connecticut Gas Company, Southwestern Electric Power Company, Western Massachusetts Electric Company, Wheeling Power Company and Yankee Gas Services Company.

Eric T. Ray, Esq. and Paul Greenwood, Esq. of Balch & Bingham LLP, on brief for amici curiae Alabama Power Company.

Before LAMOUTTE, CARLO and KORNREICH, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

The issue before us is whether a utility may terminate service to a Chapter 13 debtor for failure to pay for post-petition service without first obtaining relief from the automatic stay of 11 U.S.C. § 362. We conclude that a utility may terminate service, without obtaining relief from stay, based upon a Chapter 13 debtor's failure to pay for post-petition service. Accordingly, for the reasons set forth below, we affirm.

**Background**

The debtor, Ann C. Jones ("Jones"), filed a petition under Chapter 13 of the Bankruptcy Code on January 17, 2006. The Boston Gas Company, doing business as Keyspan Energy Delivery New England ("Keyspan"), had provided prepetition natural gas service to Jones at her residence, for the purpose of heating her home, and continued to provide the service postpetition. Keyspan received notice of the commencement of the case and, on February 15, 2006, filed a proof of claim for prepetition arrears in the amount of

$4,378.90.[1] Jones incurred postpetition arrears to Keyspan and as a result the utility demanded payment of the post-petition debt, informing Jones that gas service would be terminated if the bills were not paid. Full payment of the delinquent post-petition bills was not made and on or about September 21, 2006, Keyspan discontinued Jones' gas service without obtaining relief from the automatic stay.[2] At the time of the termination of service, Keyspan indicates that it was owed $1,381.13 for post-petition utility service. Jones requested restoration of the service and Keyspan demanded payment of $400 and proof that the bankruptcy case was still pending.

Jones ultimately filed a motion with the bankruptcy court seeking to compel Keyspan to restore service and also sought sanctions for an alleged violation of the automatic stay. Jones asserted that Keyspan violated the automatic stay by discontinuing gas utility service for nonpayment of post-petition service bills. After the filing of the motion with the bankruptcy court, Jones paid Keyspan $400 and the utility restored gas service. Thereafter, Keyspan opposed Jones' motion by indicating that utility service was restored after the $400 payment was received and by denying that relief from the automatic stay is necessary before a utility may discontinue service. The bankruptcy court held a hearing on September 28, 2006, and issued a memorandum decision on October 5, 2006, denying Jones' request for sanctions and concluding that 11 U.S.C. § 366(b) expressly permits termination of utility service for failure to pay postpetition bills, which does not violate the automatic stay.

Jones filed a timely notice of appeal on October 15, 2006. The bankruptcy case was thereafter dismissed by order entered on November 16, 2006. Keyspan suggests, in a footnote, that the appeal may be moot based on the dismissal of the underlying bankruptcy case. See Brief of Appellee at 5 n.2.

**Jurisdiction and Standard of Review**

 A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if the parties do not address the issue. See In re George E. Bumpus, Jr. Constr. Co., 226 B.R. 724 (1st Cir. BAP 1998). We have jurisdiction to hear appeals from "final judgments, orders and decrees." 28 U.S.C. § 158(a); see also Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.), 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" In re Bank of New England, 218 B.R. at 646 (quoting In re American Colonial Broad. Corp., 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy court's order determining whether there has been a violation of the automatic stay is a final order that supports appellate jurisdiction, In re Heghmann, 316 B.R. 395, 400 (1st Cir. BAP 2004), and involves a question of law that is subject to de novo review. See Varela v. Ocasio (In re Ocasio), 272 B.R. 815, 822 (1st Cir. BAP 2002); see also Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 973 (1st Cir.1997). The bankruptcy court's interpretation of 11 U.S.C. § 366 is also a question of law and thus, subject to de novo review.

---

**1.** The attachment to the proof of claim, titled "Account Running Balance," shows a balance of $4,040.72, which is also the amount that Keyspan claims it was owed, as of the petition date, in its brief. See Brief for Appellee at 2.

**2.** Jones does not dispute that Keyspan followed the procedures established by the state of Massachusetts for the discontinuation of service for failure to make payment.

■ In the present case, the underlying bankruptcy case was dismissed during the pendency of this appeal. Notwithstanding, an action under § 362(h) for damages for willful violation of the automatic stay, survives the dismissal of the bankruptcy case. *See Price v. Rochford,* 947 F.2d 829, 831–32 (7th Cir.1991); *see also Javens v. City of Hazel Park (In re Javens* ), 107 F.3d 359, 364 n. 2 (6th Cir. 1997); *In re Carroll,* 903 F.2d 1266 (9th Cir.1990); *Menk v. LaPaglia (In re Menk* ), 241 B.R. 896, 906 (9th Cir. BAP 1999); *In re Fingers,* 170 B.R. 419, 425 (S.D.Cal.1994); *Skaggs v. Fifth Third Bank of Northern Kentucky (In re Skaggs* ), 183 B.R. 129 (Bankr.E.D.Ky. 1995); *In re Nelson,* 159 B.R. 924, 925 (Bankr.D.Idaho 1993). Thus, the present appeal is not moot.

### Merits

Section 366 of the Bankruptcy Code pertains to the rights and obligations of debtors seeking to retain utility service after the filing of a bankruptcy petition and provides that:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366.

■ The purpose of § 366 is "to prevent the threat of termination from being used to collect pre-petition debts while not forcing the utility to provide services for which it may never be paid." *Begley v. Philadelphia Elec. Co. (In re Begley* ), 760 F.2d 46, 49 (3d Cir.1985). Congress sought to strike a balance, in enacting § 366, between the general right of a creditor to refuse to do business with a debtor postpetition, and the debtor's need for utility service. *In re Best Products Co.,* 203 B.R. 51, 53 (Bankr.E.D.Va.1996); *see also Hanratty v. Philadelphia Elec. Co. (In re Hanratty* ), 907 F.2d 1418, 1424 (3d Cir.1990). The section in essence recognizes the monopoly powers of most utilities and requires that they provide initial service to a debtor after a bankruptcy case is commenced.

■ Within the small body of case law involving this issue, § 366(b) has been read as an exception to the automatic stay, allowing a utility to alter, refuse or discontinue service for failure to provide adequate assurance of payment without recourse to the bankruptcy court. *See Carter v. South County Water System (In re Carter* ), 133 B.R. 110, 112 (Bankr. N.D.Ohio 1991) (holding in a Chapter 13 case that a utility's right to terminate service for debtor's failure to tender adequate assurance of payment under § 366(b) is "self-executing" and that "a formal proceeding by the utility is not required."); *In re Penn Jersey Corp.,* 72 B.R. 981, 985 (Bankr.E.D.Pa.1987)(stating that debtor's failure to provide adequate assurance of payment places the debtor "virtually at the mercy of the utility"), *abrogated on other grounds, In re Lease–A–Fleet, Inc.,* 131 B.R. 945, 949–50 (Bankr.E.D.Pa.1991); *Marion Steel Co. v.*

*Ohio Edison Co. (In re Marion Steel )*, 35 B.R. 188, 197 (Bankr.N.D.Ohio 1983). Thus, based on a debtor's failure to provide adequate assurance of payment, bankruptcy courts have concluded that § 366(b) grants utilities the unilateral right to terminate service.

Courts have logically segued to the conclusion that if failure to provide adequate assurance of payment is grounds for a utility to terminate service, then failure to make postpetition payments likewise allows for termination without requesting permission from the bankruptcy court. The court in *Begley* held that where individual Chapter 7 debtors failed to pay post-petition utility bills, the utility could seek to terminate service following state law procedures without resorting to the bankruptcy court. *Begley*, 760 F.2d at 49. *See also Johnson v. Philadelphia Elec. Co.*, 80 B.R. 30, 31 (E.D.Pa.1987) (concluding that § 366(b) specifically allows a utility to terminate service in a Chapter 7 case for failure to pay for post-petition services). *See also MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Communs., Inc.)*, 262 B.R. 893 (D.Del.2001)(concluding that the bankruptcy court erred in enjoining, under § 105, termination in a Chapter 7 case based on a post-petition default). Regarding another Chapter 7 case, the United States Court of Appeals for the Sixth Circuit has explained that even where a debtor provides adequate assurance of payment, it is "well established" that the utility may still terminate service upon the debtor's failure to pay for post-

petition services. *Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579, 588 (6th Cir.1990). *See also Penn Jersey Corp.*, 72 B.R. at 985; *Allen v. Philadelphia Elec. Co. (In re Allen )*, 69 B.R. 867, 876 (Bankr. E.D.Pa.1987), and *In re Carter*, 133 B.R. at 112. Hence, courts have routinely allowed utilities to terminate service for post-petition delinquencies without obtaining relief from stay.[3]

■ Termination for failure to make post-petition payments has also been allowed by courts because they have concluded that the use of the word "solely" in § 366(a) implies that a utility may refuse to furnish services on other grounds, but not because of the commencement of the bankruptcy case nor because of prepetition debt. *Memphis Light, Gas & Water Division v. Farley*, 135 B.R. 292, 294 (W.D.Tenn.1991); *Hendrickson v. Philadelphia Gas Works*, 672 F.Supp. 823, 834 (E.D.Pa.1987); *Morris v. Detroit Edison (In re Morris )*, 66 B.R. 28, 29 (E.D.Mich. 1986); *In re Webb*, 38 B.R. 541, 544 (Bankr.E.D.Pa.1984). As stated by the court in *Webb*,

> [i]n essence, a utility has the discretion to refuse service to any debtor for any reason which would validly constitute a ground for refusal if that debtor were not in bankruptcy, with the single exception of nonpayment for past services.

38 B.R. at 544. While the aforementioned cases all involved meter tampering and/or unauthorized use of utility service, the Third Circuit Court of Appeals explained in *Begley* that:

**3.** In spite of the ability of a utility to terminate service without recourse to the bankruptcy court, utilities provide service to customers under strict rules set by the agencies that regulate them. Utilities typically bill customers on an arrears basis, that is after the service is provided and consumed. Utilities cannot terminate service without following the procedures established by the regulat-

ing agencies, which procedures are intended to provide customers with the opportunity to pay arrears over time before facing termination. In Massachusetts, for example, utilities are governed by the Department of Telecommunications and Energy's billing and termination regulations. *See* 220 C.M.R. 25.00 et al.

[t]he restriction on termination in section 366(a) bars only those terminations which issue "solely on the basis" that a debt incurred *prior* to the bankruptcy order, was not paid when due. Thus, by implication, termination for failure to pay postpetition bills would not seem barred by section 366(a).

*Begley*, 760 F.2d at 49 (emphasis in original).

Jones argues that the result in *Begley* should be different in a Chapter 13 case and relief from stay should be required because a debtor's post-petition income constitutes property of the estate pursuant to 11 U.S.C. § 1306 [4] and terminating utility service or threatening termination is an act to take possession of the debtor's income which would be prohibited by 11 U.S.C. § 362(a)(3).[5] Nevertheless, at least one court adopting *Begley* would specifically allow termination for failure to pay for post-petition service in a Chapter 13 case. *See In re Spencer*, 218 B.R. 290, 294 n. 5 (Bankr.W.D.N.Y.1998)(noting, in relation to Chapter 13 and Chapter 7 cases, that utility could commence termination proceedings pursuant to state law if there is a post-petition delinquency). This coincides with a leading bankruptcy treatise's statement of the law, which likewise does not distinguish between chapters of the Bankruptcy Code, and indicates that:

[t]he provision of adequate assurance does not prevent a utility from terminating service to the debtor or the estate if postpetition payments for utility services are not made. Such a termination must follow the procedure prescribed under nonbankruptcy law for utility terminations....

3 Collier on Bankruptcy ¶ 366.03[1].

We conclude that adoption of the argument that any act to collect a post-petition debt from a Chapter 13 debtor would implicate the automatic stay, would signify that post-petition creditors could not submit invoices to a debtor without relief from the automatic stay since it would clearly be an attempt to collect the post-petition debt and the funds would come from the debtor's post-petition income. Post-petition creditors providing a Chapter 13 debtor with goods or services are permitted to invoice debts as they come due and payment by the Chapter 13 debtor from post-petition income does not require authorization by the Court. Jones admits as much by recognizing that sending invoices for post-petition debts is not prohibited, nor is commencing litigation against a debtor. *See* Reply Brief of Appellant at 10 (citations omitted). We find that differentiating between collection methods, whether it be through invoices for the post-petition debt or termination of utility service for failure to pay the post-petition debt, to be unwarranted.[6] As the bankruptcy court below properly concluded:

The inclusion of a debtor's postpetition earnings in her chapter 13 estate is in-

---

4. This section includes as property of the estate "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first." 11 U.S.C. § 1306(a)(2).

5. This section provides that the filing of the bankruptcy petition "operates as a stay, applicable to all entities, of ... (3) any act to

obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate";.... 11 U.S.C. § 362(a)(3).

6. In all fairness, the utilities argue that they are not attempting to collect post-petition debt through termination of service, they are merely protecting themselves from further losses.

tended to capture for dedication to a chapter 13 plan all funds necessary to effectuate that plan. It does not prohibit a debtor from using postpetition earnings to satisfy postpetition obligations. And, while § 366 does not authorize a utility to proceed directly against the post-petition earnings, it does expressly authorize discontinuance of service in the circumstances of this case....

Bankruptcy Court Order at 3.

In her brief, Jones states that:

> While there is some older case law that could be read to hold that relief from the stay is not necessary before a utility may terminate service post-petition, *see In re Carter*, 133 B.R. 110 (Bkrtcy.N.D.Ohio 1991), more recent case law holds that a utility may not engage in self-help with respect to amounts coming due while a debtor is in chapter 13, *In re Davis*, 311 B.R. 922 (Bkrtcy.M.D.Ga.2004)(where debtor was in arrears on electric service during chapter 13 portion of case, debtor converted case to chapter 7, and service was terminated shortly after conversion, utility was not entitled to demand payment of the chapter 13 utility charges prior to service being restored), *citing In re Deiter*, 33 B.R. 547 (Bkrtcy.D.Wis. 1983)(11 USC § 362 stays any effort of utility to collect sums due from debtor prior to conversion of case from chapter 13 to chapter 7). This conclusion logically follows from the fact that a debtor's post-petition income is property of the bankruptcy estate, 11 USC § 1306, and the creditor may file a proof of claim for a post-petition debt, 11 USC § 1305.

Brief of Appellant at 6.

We do not refute the conclusions of the cases as cited by Jones. However, we conclude that the reason a utility cannot terminate service post-conversion, based on arrears in the Chapter 13 case, is because 11 U.S.C. § 348(d) provides that such a claim is to be treated as if it had arisen immediately before the date of the filing of the petition.[7] Thus, it is treated as a prepetition claim and the automatic stay would bar the utility from seeking to recover a debt which is dischargeable in the Chapter 7. The decisions cited by Jones, *In re Davis*, 311 B.R. 922 (Bankr. M.D.Ga.2004), and *In re Deiter*, 33 B.R. 547 (Bankr.W.D.Wis.1983), grapple with attempts by utilities to collect for service provided during the period between the filing of a Chapter 13 case and the conversion to Chapter 7. Thus, the holding of these cases does not have a bearing on nor connection to the present case, which simply involves arrears in a Chapter 13 case without a subsequent conversion to Chapter 7.

The case before us is more analogous to those involving collection of post-conversion bills, to which even cases cited by Jones hold that the automatic stay does not apply. The court in *Deiter* indicated that a utility is not stayed by 11 U.S.C. § 362 from collecting amounts due from a debtor for post-conversion services. 33 B.R. at 548. Likewise, in *In re Allen*, the bankruptcy court concluded that the utility had a powerful remedy when the debtor failed to pay for post-conversion services because the utility could seek to disconnect service for nonpayment without further re-

---

**7.** This section provides that "[a] claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under § 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition." 11 U.S.C. § 348(d).

course to the bankruptcy court. 69 B.R. at 876.

We conclude that a utility does not run afoul of the automatic stay provisions in a Chapter 13 bankruptcy case by terminating service based on a debtor's failure to pay for post-petition service. Notwithstanding, we recognize that Jones is making a heroic bid to change the course of practice between Chapter 13 debtors and the utilities that provide them with basic necessities. We also acknowledge that in spite of our decision, Chapter 13 debtors are not stripped of all protection against termination based on post-petition defaults. During the state determined and regulated termination period, a debtor may still be able to obtain a hearing in the bankruptcy court prior to termination of utility service, but the debtor must take the initiative to bring the matter before the court. Certainly, faced with a notice of termination, a debtor could seek to modify the Chapter 13 plan to include the post-petition arrears within the plan. It is obvious that Jones comprehends this option based on her statement that "it is well-settled that a chapter 13 plan may provide for the cure of any default, whether occurring pre-petition or post-petition." Reply Brief of Appellant at 9 (citations omitted).

For the reasons explained above, the bankruptcy court's order is AFFIRMED.